## DiTomasso License

*Thomas A. Curran*, for appellant.

*Edmund P. Hannum*, for Pennsylvania Liquor Control Board.

TOAL, J., October 28, 1948.—This is an appeal from the order of the Pennsylvania Liquor Control Board dated August 18, 1948, revoking a restaurant liquor license for premises known as Club Hi-Top located at 2229 West Ninth Street, Chester Township, Delaware County, Pa.

The board found, as a basis for the order of revocation, that:

1. Appellant had committed a fraud on the board in not disclosing the additional pecuniary interest in the business;

2. Appellant had falsified his application;

3. He is not the only person pecuniarily interested in the licensed business.

The board revoked the license on the above grounds.

This case comes before the court on an appeal by licensee from an order of the Pennsylvania Liquor Control Board revoking the restaurant liquor license in accordance with the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended, 47 PS §§744-410 and 744-404. The matter is now before this court de novo.

By stipulation the parties have agreed that the court may dispose of the case upon the evidence adduced at the hearing on the citation taken before Michael J. McEnery, Esq., the examiner for the Pennsylvania Liquor Control Board for this area. The notes of testimony of this hearing have been submitted to the court by the Pennsylvania Liquor Control Board as the parties had no additional evidence to submit.

From the record now before the court the following chronological facts may be stated:

1. On April 8, 1948, upon application, the Pennsylvania Liquor Control Board issued to Dan DiTomasso a restaurant liquor license no. TR 16430 and an amusement permit TAP 4912 for premises 2229 West Ninth Street, Chester Township, known as Club Hi-Top. The amusement permit expired on October 31, 1948.

2. Appellant-licensee, Dan DiTomasso, operated the licensed business from April 8, 1948, until April 24, 1948, when he voluntarily surrendered the license to the Pennsylvania Liquor Control Board for safe keep-

ing, alleging that one Walker Lindsay was attempting to exercise dominion and control over the licensed premises and was making threats against licensee.

3. On June 3, 1948, a citation was issued against licensee by the Pennsylvania Liquor Control Board charging:

(a) Licensee had perpetrated a fraud in that the pecuniary interest of Walker Lindsay in his business was concealed when the application was made to the Pennsylvania Liquor Control Board for restaurant liquor license.

(b) Licensee falsified his application for restaurant liquor license for the year expiring October 31, 1948.

(c) Licensee was not the only person in any manner pecuniarily interested in the operation of the licensed premises.

4. On August 18, 1948, the Pennsylvania Liquor Control Board at Harrisburg issued an order revoking the license for the foregoing reasons.

5. On August 31, 1948, licensee appealed to the Court of Quarter Sessions of the Peace in and for Delaware County from the order of revocation in accordance with the provisions of the Pennsylvania Liquor Control Act.

The court has carefully examined the notes of testimony taken before the examiner and the facts shown may be stated as follows:

Appellant formerly was a licensee from the Pennsylvania Liquor Control Board and as such he has a good record. He served in the United States Army in the Pacific theatre where he contracted malaria and sold his license in Clifton Heights for this reason. Sometime after he convalesced he worked with one Jack Sugarman who was licensee for the Club Hi-Top (the licensed premises in question in this case). While working for Sugarman appellant loaned him $5,000 and took notes as security. Because of the inability

of Sugarman to repay the loans, he offered to sell appellant the liquor license and give credit on account of the purchase price for an amount equal to the loans. The agreed purchase price was $7,500 and, therefore, appellant paid in cash the sum of $2,500, further agreeing however to assume all debts owed by Sugarman in the business amounting to $24,000 additional. There was included in these debts a sum of $7,500 due from Sugarman to one Walker Lindsay of Media. The agreement to purchase the license and to assume the debts of the business was made in writing having been prepared by an attorney. An examination of this agreement shows that appellant was assuming debts owed by Sugarman in the amount of $24,000. The purchase price stated in the agreement is $2,500, which sum was paid by appellant in cash at the time of settlement. After the agreement was entered into and duly executed by the parties, Sugarman introduced one Walker Lindsay to appellant who apparently had been waiting in an adjoining office. Sugarman told appellant that Lindsay was one of the creditors whose debt he, appellant, had assumed. After some talk as to how appellant expected to pay the debts he stated that he was only going to take $75 per week as salary and apply all profits to the payment of debts. The record later shows that for the short period of time that he operated the business, appellant did not draw any money from it, not even the $75 a week which he expected to draw. The other debts which appellant assumed were claims owed to the Federal Government for income tax, social security and unemployment compensation accounts, as well as the amusement tax which were due and owing by Sugarman. There were other claims also owed by Sugarman arising from the operation of the restaurant. Appellant took possession and control of the business and operated it for a period of about two and one half weeks, or until Satur-

day, April 24, 1948, at which time Walker Lindsay came to the premises and learned that appellant was having difficulty meeting his current expenses. At this time Lindsay, by his conduct, attempted to exercise control and dominion over the business, and made certain threats against appellant. Appellant was very much exercised and worried as a result of Lindsay's actions and later, in a conversation with agents of the Pennsylvania Liquor Control Board he made a full disclosure of the situation. He also engaged counsel and was advised by counsel to return the license to the Pennsylvania Liquor Control Board at Harrisburg for safekeeping. The premises in question were closed and the record shows that appellant was most anxious to do whatever he could to keep his previous good record stainless and to prevent Lindsay from managing or conducting the business.

Appellant on several occasions used the expression of "silent partner" or "partner" referring to Lindsay's status. The court is of the opinion that this terminology used by appellant, while unfortunate in its implications, is contradicted by the actual facts in the case, which do not disclose that there was any partnership arrangement between appellant and Lindsay. The record, however, indicates that when appellant entered into the agreement to purchase the license and the business, he acted entirely in good faith and he thought he was to conduct, control and manage the business in a way to pay off the indebtedness which he had assumed and to make a success of the business venture. The record shows that there was no disclosure of the fact that Lindsay was one of the unpaid creditors until the agreement of purchase for the liquor license and business had been entered into by appellant. The record shows that the examiner was of the opinion at the hearing before him that there was

not any partnership arrangement between appellant and Lindsay, but that appellant had inherited Lindsay as a debtor of Sugarman's and that everything that he did after taking over the license, negatived a partnership arrangement. The record further discloses that after the appellant surrendered his license to the board he attempted to salvage something from the business and to pay off the creditors. To do this he secured a purchaser for the license, one William J. Blackburn who formerly held a license. Under this agreement appellant authorized the escrow agent to pay as many of the creditors as possible having claims against the business.

The court of quarter sessions in reviewing a decision of the Liquor Control Board revoking a license may, if there is a conflict in the evidence, make different findings of fact than those of the board and impose a less or more severe penalty: Andracchio Liquor License Case, 160 Pa. Superior Ct. 74; Lehigh Valley Brewery Workers Home Association Liquor License Case, 154 Pa. Superior Ct. 141; Elite Social Club and Debating Society Liquor Case, 156 Pa. Superior Ct. 457.

The court does not agree with the findings of fact made by the board in this case and accordingly makes its own findings of fact:

1. That appellant, Dan DiTomasso, did not perpetrate any fraud on the Pennsylvania Liquor Control Board in purchasing the license from Jack Sugarman, but that, on the contrary, he acted in entire good faith in the transaction.

2. That appellant, Dan DiTomasso, did not falsify his application for transfer of restaurant liquor license for the year which expired October 31, 1948, but, on the contrary, that he was the only one pecuniarily interested in the ownership of the business.

3. That appellant-licensee was the only person in any manner pecuniarily interested in the operation and ownership of the licensed business.